UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRAVIS JAMES HUSNIK,

    Plaintiff,

v.                                         Case No. 10-C-781

CORPORAL ENGLES, OFFICER NIES,
OFFICER LEYNDECKER, OFFICER DEWINTER,
D. JOHNSON, D. OLSON, OFFICER TRINKNER,
OFFICER FRUZEN, OFFICER GOSPODAREK,
OFFICER BERENDSEN, DEPUTY LANGTANG,
LIEUTENANT FROST, and LIEUTENANT PHANKE,

    Defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DOC. 62), AND DENYING PLAINTIFF'S MOTIONS FOR
SUMMARY JUDGMENT (DOC. 57) AND APPOINTMENT OF COUNSEL (DOC. 81)

Plaintiff filed this pro se action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed in forma pauperis on a claim that the defendants used excessive force against him while he was detained in the Brown County Jail. The parties have filed cross motions for summary judgment. For the reasons stated herein, plaintiff's motion for summary judgment will be denied and defendants' motion will be granted.

STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable

substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## FACTUAL BACKGROUND[1]

Husnik was a pretrial detainee at the Brown County Jail (BCJ) on April 9, 2009, when he appeared before Brown County Court Commissioner Lawrence Gazeley and said, "F–k you, you can't do s–t to me." Husnik was verbally abusive and struggled with Brown County Sheriff's Deputies Nelson and Vogel as they escorted him from the courtroom. Deputies Trich and Lantagne came to their assistance. Husnik continued to resist and kicked his legs into the upper abdomen and chest of Lantagne, before he was subdued and returned to BCJ.

---

[1] Facts are taken from Defendants' Proposed Findings of Fact, which are undisputed.

At the BCJ, after Corrections Officers DeWinter and Johnson told Husnik that he would be taken to Fox Pod, he began yelling that he was not going back there and said, "F–ck you, we're going to fight." DeWinter and Johnson struggled to control Husnik, who lunged at DeWinter and knocked him against a wall. DeWinter's head hit the wall and he fell to the floor, with Husnik coming down on top of him. Other corrections officers, including Corporal Leyendecker and Officers Nies, Olson, and Trinker arrived to help DeWinter, Johnson, and Lantagne regain control of Husnik. While on the floor, Husnik was attempting to swing his arms and kick his legs and feet at the corrections officers, despite having on a leather restraint transport belt with handcuffs and transport leg irons or restraints.

A restraint chair was brought in to move Husnik to Fox Pod. Husnik continued struggling with the officers as they moved him to the restraint chair and began chewing through the spit hood that was placed on him, spiting at officers, and resisting officers who were attempting to place his arms into the wrist straps. No video recording exists of Husnik's altercation with officers or the officers' use of force on April 9, 2009.[2]

Once all the restraint straps were placed on Husnik's wrists and ankles, DeWinter and Olson began removing Husnik's socks in accordance with Brown County Jail protocol pertaining to inmates strapped into a restraint chair so that the capillary refill in his exposed feet and toes can be checked for good blood circulation. The protocol calls for the ankle

---

[2] Recordings made by stationary video surveillance cameras at the Brown County Jail are only maintained for 90 days, and no handheld camera was used to videotape the events at issue, which were not planned. (Affidavit of Brown County Jail Security Lieutenant Phillip Steffen, Doc. 84). Steffen also explains that the boxes labeled "Passive CM" and Active CM" in the Officer Actions section of the Brown County Sheriff's Department Use of Force Report refer to passive countermeasures and active countermeasures used by the officers, not to whether cameras were used to record the incident. *Id.*

straps to be fastened securely with the straps tight enough that the inmate cannot work himself free from the ankle straps.

Husnik would not cooperate with the removal of his socks and began to move his knees and legs back and forth violently. Leyendecker and Nies ordered Husnik to stop moving his legs back and forth, but he kept moving them violently, as before.

Nies displayed a hand-held stun device to Husnik and told him that he would use it on him if he did not stop moving his knees, and in reply Husnik stated, "Go ahead, I don't f–cking care," and continued to move his legs back and forth. Nies again displayed the stun device to Husnik and arced it away from him. When Nies attempted to discharge the stun device on Husnik's right thigh, it failed to work. Nies tested the stun device away form Husnki's leg, and then it worked. Nies again placed the stun device on Husnik's right thigh, telling him to stop moving his legs, but he refused to comply.

Nies then activated the stun device for a few seconds, and Husnik stated something to the effect, "That ain't s–t," and continued to move his legs back and forth violently. Husnik's left arm then came free from the wrist strap on the left arm seat of the restraint chair. Leyendecker told Husnik to put his left arm back in the wrist strap or he would use the Taser on him, and in response, Husnik said, F–k you," and continued to swing his left arm. Leyendecker deployed the Taser at Husnik and allowed it to discharge for about five seconds. Husnik then complied with officers' commands to stop swinging his left arm, and officers were able to secure his left arm in the wrist strap on the restraint chair.

Husnik then was wheeled to Fox Pod, while he attempted to rock the chair from side to side in an attempt to tip it. At about 4:30 p.m. on April 9, 2009, Husnik was calm and cooperative when Nurse Miller assessed him. Husnik told Miller that he was all right.

4

Husnik avers that he suffered pain in his stomach and fears organ damage and not being able to have more children as a result of receiving a total of four electric shocks from the stun gun and Taser in his abdomen and leg.

ANALYSIS

Excessive force claims by pretrial detainees fall under the Fourteenth Amendment's right to due process, which "provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment." *Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010). However, "the exact contours of any additional safeguards" provided by the Fourteenth Amendment "remain undefined." *Id.*, quoting *Lewis v. Downey,* 581 F.3d 567 (7th Cir. 2009). Consequently, the traditional Eighth Amendment inquiry applies, and "[o]nly force intended 'maliciously and sadistically' to cause harm" to the inmate violates the Constitution. *Id.* On the other hand, force that is used "in a good-faith effort to maintain or restore discipline" does not violate an inmate's rights. *Id.*, quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

Husnik argues that Nies and Leyndecker acted with callous disregard for his rights by using the stun gun and Taser against him while he was in the restraint chair, and that the other defendants should have intervened to stop them. Defendants contend that their actions were reasonable under all of the circumstances and that they acted because of Husnik's failure to comply with their lawful commands and while he continued to actively resist the officers' efforts to gain control of him. Regardless, there are no significant disputes of material fact.

Husnik acknowledges that he pushed and kicked two officers prior to being placed in a restraint chair, that he refused to permit the officers to remove his socks once he was

5

in the restraint chair, and that he kept moving his knees to prevent defendants from removing his socks. He explains that he didn't want his feet to get cold, but does not dispute that the Brown County Jail's policy required that his socks be removed, or that he was warned repeatedly that a stun gun and Taser would be used if he failed to comply with commands. While Husnik emphasizes that he was fully restrained when the stun gun was used, he admits his refusal to follow orders. Moreover, the requirement that socks be removed from inmates in the restraint chair was based on a need to observe blood circulation and to prevent inmates from working their ankles free from the restraints. Additionally, officers were entitled to take necessary measures to remove Husnik's socks, which he continued to resist physically and verbally. Husnik also admits that his arm swung free from the restraint chair during the altercation.

This situation is far afield from *Lewis*, where the plaintiff contended that he was merely lying on his bunk in his cell when a guard suddenly shot him with a Taser without warning or provocation. Here, Husnik verbally abused a judge, kicked one deputy, knocked another deputy into a wall, and physically resisted his move to a new cell while shouting obscenities and threats. All of this occurred while Husnik was restrained by transport leg irons and handcuffs, thereby demonstrating his combativeness. Even after Husnik was controlled in the restraint chair, he continued to fight efforts to remove his socks despite warnings that a stun gun would be used. In light of these undisputed facts, no reasonable jury could find that the defendants acted in bad faith, or that their limited use of a stun gun and then a Taser, after repeated warnings, rose to the level of being unnecessary and wanton.

6

Finally, Husnik filed a motion seeking appointment of counsel, stating that it was prepared "just in case his case has to go to jury trial." (Doc. 81 at 1). Therefore,

IT IS ORDERED that plaintiff's motion for appointment of counsel (Doc. 81) is DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Doc. 62) is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Doc. 57) is DENIED.

IT IS FURTHER ORDERED that this case is DISMISSED.

Dated at Milwaukee, Wisconsin, this 7th day of March, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
Chief U.S. District Judge